23 C.C.P.A.(Patents)

## In re BLANCHARD.
### Patent Appeal No. 3621.

Court of Customs and Patent Appeals.
March 23, 1936.

Louis A. Jones, of Boston, Mass. (Emery, Booth, Varney & Townsend, of Boston, Mass., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, rejecting claims 1, 2, 3, 7 to 12, inclusive, 14, 15, and 17 to 20, inclusive, of appellant's application. Certain claims were allowed by the examiner.

Claims 1, 10, 17, and 20 are illustrative and read as follows:

"1. The combination with a lathe comprising a bed, a head-stock, a spindle, and pulley thereon, of a support beneath, spaced from and supporting said bed, power transmitting mechanism below said support and comprising a shaft, bearings for said shaft, and an overhanging pulley on said shaft, outside said bearings and beneath the first-mentioned pulley, and a belt connecting said pulleys, said support being provided with a single opening through which both leads of said belt extend, thereby to permit removal and replacement of said belt to be accomplished by passing said belt bodily through said opening."

"10. The combination with a lathe comprising a bed, a head-stock, a spindle, and a pulley, of a support beneath and spaced from said bed, a pulley beneath said support, a belt connecting said pulleys, and means in the space between said support and said bed for adjusting said bed toward and from said support."

"17. The combination with a lathe comprising a bed, a head-stock, a spindle, and a pulley thereof, of a housing beneath said bed, a transmission mechanism within said housing, said mechanism comprising driving and driven shafts projecting from said housing, a pulley on said driven shaft, a belt connecting said pulleys, a motor having a shaft parallel with said driving shaft, means including a flexible, driving member connecting said motor shaft to said driving shaft, means supporting said motor on said housing for movement toward and from said driving shaft, and means for holding said motor in fixed position to maintain the tension of said flexible driving member."

"20. The combination of a lathe comprising a bed, a head-stock thereon, a spindle journaled in said head-stock, a pulley on said spindle, a support for said bed beneath the latter, a transmission mechanism beneath and supported by said support and including driving and driven shafts, a pulley on said driven shaft, a belt connecting said pulleys, a motor having a shaft, a pulley on said motor shaft, a pulley on said driving shaft, a belt connecting said pulleys on said motor shaft and on said driving shaft, and means providing for removal and replacement and tensioning of said belts without disassembling any part of said motor, said transmission mechanism or said lathe."

The references cited are:

Hunziker, 122,768, January 16, 1872.
Woerd, 144,178, October 28, 1873.
Wrigley, 434,011, August 12, 1890.
Bouillon, 1,407,834, February 28, 1922.
Langhammer, 1,469,226, October 2, 1923.
Ingham et al., 1,501,346, July 15, 1924.
Schellenbach, 1,535,346, April 28, 1925.
Cockburn, 1,670,139, May 15, 1928.
Schroder, 1,708,903, April 9, 1929.
Jarvis, 1,874,755, August 30, 1932.

Appellant's application relates to a precision bench lathe, the bed of which is small enough to be positioned upon a large bench; the motor and gear shift used in driving the head-stock are positioned below the bench. The details of the alleged invention are sufficiently described in the above-quoted claims.

The examiner combined a large number of the cited references to produce appellant's structure, and held that such combination of elements would be obvious to one skilled in the art and did not involve invention.

We will not undertake to describe all of the cited references utilized by the examiner, as we deem it unnecessary to do so for the purposes of deciding the issues before us.

The Board of Appeals in its decision stated: "The examiner has been at some pains in attempting to meet the various claims on appeal by combining certain references of record. It is perhaps true it is not especially clear how various features in the patented constructions could be combined or substituted for other mechanism without considerable modification of structure. We, however, look at the matter in a broader light. It is our view that what appellant has done is to incorporate certain features old in the prior art in a type of lathe not in ordinary use but old in the art and has produced a somewhat different design rather than features of patentable merit. For instance, the provision of suitable means to allow a continuous belt to be withdrawn seems to us *more or less obvious* with the type of lathe under discussion. Also the arrangement for adjustment of the two driving belts between the head-stock and the gear shift mechanism and between the gear box and the motor is either not new in itself or does not appeal to us as presenting patentable novelty. In our opinion this is a case where it is necessary only to point out in the prior art the features alleged to be novel and show lack of either novelty or invention and not attempt to find all the elements recited in the various claims in any one patent or to explain how certain features found in different patents could be combined." (Italics ours.)

It will be noticed that all of the claims before us are in the form of combination claims, and the only question is whether the combinations set out in the claims required the exercise of the inventive faculty.

■ Claims 1, 2, 3, 7, 8, and 9 embrace elements that permit the use of an endless belt for driving the lathe spindle. Appellant points out that the use, for that purpose, of a belt in which the two ends are brought together and fastened to each other by a leather lacing or a metallic fastener would, in passing over the pulleys, cause vibration interfering with the fine precision of the lathe. An endless belt is therefore desirable to avoid such vibration. It was held by the Patent Office tribunals that the structures shown in certain of the references, particularly that in the patent to

Schellenbach, disclosed a similar arrangement of mechanism which permitted the use of endless belts, and that therefore this element of appellant's combination claims would be obvious to one skilled in the art, without the exercise of invention. We are not in accord with this view, and we must disagree with the view that the structure disclosed by Schellenbach would permit the use of an endless belt. The Solicitor for the Patent Office contends that the impediment to the removal of the belt shown by Schellenbach is only a detachable hood, but we are not of that opinion. What the solicitor terms a "detachable hood" is merely a covering for the head-stock, but the head-stock itself clearly would prevent the removal and replacement of an endless belt. With respect to the other references disclosing means for removing endless belts from the structures disclosed, we do not think that one skilled in the art would get the suggestion therefrom that such means could be employed in appellant's combination, and we are of the opinion that it required the exercise of the inventive faculty to so combine the elements of appellant's structure as to permit the use of an endless belt. We are therefore of the opinion that claims 1, 2, 3, 7, 8, and 9 should be allowed.

■ Claims 10, 11, 12, 14, and 15 embrace elements for varying the belt tension, and it is appellant's contention that such elements render said claims patentable. Appellant discloses two vertically adjustable pedestals, each having two telescopically arranged sleeves having screw threaded engagement with each other, so that by rotating the inner sleeves, the outer sleeves being fixed, the bed of the lathe may be moved vertically, the belt tension varied, and the bed leveled.

The patent to Wrigley discloses a vertically adjustable dynamo support. The patent states: "This my invention has for its object to provide a simple, strong, and durable device for supporting a dynamo-electric machine in a manner to enable an instantaneous raising or lowering of such dynamo for the purpose of tightening the endless driving-belt or for slackening the same to be released of its tension while not in operation, and thereby to retain the elastic hold of such belt upon the pulleys to better advantage for driving the dynamo; * * *"

The patent discloses a means for tensioning the belt of a dynamo by raising and lowering the pedestal supports of the same,

the pedestals each comprising two threaded members, relative movement of which members varies the height of the pedestals. In the construction shown, raising the dynamo loosens the belt because the power source is indicated as being above the dynamo bed, whereas in appellant's construction raising the lathe bed tightens the belt since his power source is below the lathe bed. However, the patent contains the following statement: "* * * but the dynamo may as well be driven from a shaft below when the raising and lowering of the dynamo must be in a reversed order. * * *"

Appellant contends that the Wrigley patent relates to a nonanalogous art, viz., dynamos, while appellant's application relates to lathes. We cannot agree with this contention. The Wrigley patent relates to means for tightening and loosening a driving belt, and the mere fact that the bed to be raised or lowered carries a dynamo in Wrigley, while appellant uses similar means to raise or lower the bed of a lathe, is immaterial.

We think that, in view of the Wrigley patent, it would be obvious to one skilled in the art to employ the raising and lowering means disclosed by appellant. We find no error in the decision of the board with respect to claims 10, 11, 12, 14, and 15.

■ Claims 17, 18, and 19 are directed to a construction which provides for the installation, adjustment, and removal of the belt or belts by which power is transmitted from the motor to a gear box or what is described in appellant's specification as a "speed box," which is supported by and beneath the bench.

The examiner rejected these claims upon several separate combinations of references, holding that in view of such references appellant's combinations set out in said claims were obvious to one skilled in the art and did not require the exercise of the inventive faculty. The Board of Appeals in general terms affirmed these grounds of rejection. While appellant contends that certain features embraced in the claims are not shown in the references, we are of the opinion that any one constructing a precision lathe of the general type described by appellant would readily employ such features in view of the prior art. It is our view that claims 17, 18, and 19 were properly rejected.

■ There remains for consideration claim 20. The novel features claimed by appel-

lant to be embraced in this claim relate to the installation, tensioning, and removal of the belts referred to in the claim without disassembling any part of the motor, transmission mechanism, or the lathe. While appellant contends that the belts referred to in the claim are endless belts, we find nothing in the claim which so recites, and the claim is therefore distinguishable from the first group of claims which we have hereinbefore held should be allowed. We are in accord with the view of the examiner and the Board of Appeals that, in view of the cited references, no invention is involved in claim 20, and it was properly rejected.

For the reasons stated herein, the decision of the Board of Appeals is reversed as to claims 1, 2, 3, 7, 8, and 9, and affirmed in all other respects.